May it please the court, my name is Jim Burns, I'm representing Encompass. Mr. Burns, we'll hear from you first. Oh yes, I'm sorry your honor. I represent Encompass Insurance Company. We have an underinsured motorist policy with Mr. Paul Wills. This is an unusual case for several different reasons, but one of those reasons is the nature of the injury that Dr. Wills is claiming. He had a $500,000 underinsured policy with Encompass, $500,000. He was rear-ended, he went to the emergency room, was treated and released. His medical bills there were well less than $10,000, I think it was less than $5,000. He essentially was treated for whiplash, but ultimately he was making a claim against Encompass for the entire $500,000, which was in addition to the $50,000 he collected from the underlying tort fees. Now that's a lot of money to be claiming for this kind of an injury, and it was not because he had whiplash that he thought he was entitled to $500,000. His claim related to a theory of causation with respect to a pre-existing Parkinson's condition that he had. He had struggled with Parkinson's now for about nine years before this accident. He kept it fairly under control, but after the accident it appeared to him that the Parkinson's got much worse. Because the Parkinson's got much worse, it essentially completely disabled him. Because he was a physician, his income was such that being completely disabled, it wasn't difficult to see how he would have a loss of earning capacity of $500,000. That was his theory. Now, he filed a complaint ultimately against Encompass demanding that we pay the limits of his policy, and three months after he filed the complaint, he filed a motion for summary judgment. This is an unusual case also because it's usually defendants that are filing summary judgments. In this case, it's the plaintiff. In order for him to win on summary judgment, it's not enough for him to show that one element of his claim is satisfied. He has to show that all the elements of his claim is satisfied. Now, it's important to note that the nature of his summary judgment was he wanted summary judgment for loss of earning capacity because of injuries sustained in the accident. That was the thrust of his motion. That was the whole point of his motion. In order to win on this then, he's got to show two things. First, he's got to show an injury relating to the accident. The second is he has to show a $500,000 loss of earning capacity, but it's not enough for him just to show those two things. He has to show that the first caused the second. Now, when you look at Dr. Will's motion, it is abundantly clear based upon the motion itself, based upon the affidavit submitted with the motion, that he considered the aggravation of his Parkinson's disease to be the key to how it is that he had a total loss of earning capacity. This does not just encompass his contention. This was Will's own contention. It's the whole logic of his summary judgment motion is that the accident aggravated his make it so that he could no longer earn a living. Counselor, Judge Kobus here, is the policy anywhere in the record? I don't, actually I don't know that it is. We're not contending or contesting that this is a coverage issue. We believe that if he can show $500,000 in damages, that we would owe him $500,000, but no, I don't believe that the policy. You would suggest he needs to show the $500,000 in damages, if I understand it, plus causation, right? Yes, yes. Well, in fact, he would have to show $550,000 worth of damages because he collected $50,000 from the underlying court fees. But yes, that's correct, Your Honor. Paul Will's own affidavit makes it very clear that it was the degradation of his Parkinson's condition that made it impossible for him to continue to work. His wife had a similar affidavit that makes similar claims. He does mention other injuries, this is true. Presumably it's the whiplash that he's talking about and some kind of an injury to his neck or his back, but it's only the Parkinson's that he actually names, and when you look at the affidavit submitted, you see that it is very clear that it's his Parkinson's that made it impossible for this man to work any longer, which is the justification for a $500,000 claim. Now, Compass, for our part, have always considered that if, in fact, we cause his Parkinson's to get worse like this, it won't be hard for Dr. Wills to show these kinds of damages. His own, that is Dr. Wills' own medical expert, has a four-page affidavit. He originally saw him, he's a pain management doctor, and he originally saw Dr. Wills for whiplash. He only treated him for whiplash over the first month or so after the accident, but in fact, most of his treatment related to dealing with what had become a worsening Parkinson's situation. His four-page affidavit, which is there in the addendum, three of those pages are all about Parkinson's and how an accident can cause Parkinson's to get worse and how his Parkinson's got worse. When he concludes the final two paragraphs of Dr. Swyscott, and this is Dr. Wills' own expert, make it very clear that he considers the combination of the worsened Parkinson's, which he believed was worsened by the accident, together with his underlying cervical and lumbar spine condition, and he had typical degenerative disc disease, the combination of those two things made his prognosis very poor. In his opinion, Dr. Wills would not be able to work any further. That's the nature of the motion itself and the evidence submitted with it. Encompass had a lengthy response, but the key part of that response was our own expert, we had retained, in order to advise on whether the evidence shows that Parkinson's was aggravated in this accident. The key thing for your honors to understand at this point is our doctor said that the accident did not aggravate and did not affect the further course of Dr. Wills' Parkinson's. What's key is what the state court judge did with this. The state court judge acknowledged that we had rebutted the connection between the accident and an aggravation of the Parkinson's. He says in his order that that is a fact question that must be reserved for the jury. In other words, maybe the accident aggravated the Parkinson's, which led to this loss of earning capacity, and maybe the accident did not aggravate the Parkinson's, which led to a loss of earning capacity. Really, your honors, that is the key to understanding this. Do you recall what page of the state judge's order that is off the top of your head? Yeah, your honor, that would be on addendum page six, the very top of the page. It says with reference to issue number one, there's an issue of fact on the sole proposition as to whether or not the vehicle accident on November 17, 2015 aggravated Dr. Wills' pre-existing Parkinson's disease. Thank you. Now, the basic idea of a summary judgment is that if the undisputed facts compel a conclusion that Dr. Wills is entitled to summary judgment as a matter of law, then he ought to win. But to put it the other way, really kind of paraphrase something that Dr. Wills said in his own brief, if a reasonable jury could conclude and find for encompass, then summary judgment should not follow. In this case, since the judge found that his Parkinson's may not have been aggravated by the accident at all, with that conclusion by itself, a reasonable jury could conclude that this accident was not responsible for $500,000 or $550,000 loss. That is really all that is necessary to see why this judge should not have granted the summary judgment and why I'm asking you to reverse the summary judgment. It is a fact question that must be answered before we can possibly determine how much, if anything, encompass ought to pay Dr. Wills as a result of this accident. As long as we can't say whether the accident affected his Parkinson's or not, we're simply left with no information whatsoever that we can rely on to determine damages. That's key here. Hey, Mr. Burns, I have a lingering question about jurisdiction in this case. I wondered if you would be willing to speak to that. Your notice of appeal notices an appeal from three orders of a state court. You don't challenge the U.S. District Court's order denying, for example, your Rule 60B motion. You don't dispute the District Court's ruling on Rooker-Feldman, which the apple even concedes was wrong. You just argue that we should review three state court orders. Why don't we lack jurisdiction over this appeal if that's the only thing that's been noticed? Well, your honor, the District Court did not deal with the state court orders precisely because the District Court thought he shouldn't. Yeah, I know, but you didn't appeal that. You didn't appeal that. I think you could have appealed that and said, Judge Brooks was wrong about Rooker-Feldman and he should have reviewed the merits of the state court order. You could have argued something like that, but you didn't appeal that order. No, your honor, I didn't. The judgment, the District Court, you only appealed three state court orders. Correct. The reason I didn't appeal the Rooker-Feldman is because even if I had appealed that Rooker-Feldman and it ended up winning that, we'd be right back where we are right now. It seemed like the much more efficient purpose is if he doesn't want to review that, if he doesn't think he should review that, certainly nobody's going to deny that you can review that. If he had granted my motion ... Well, I'm suggesting I might deny that we can review a state court decision, but we could review a U.S. District Judge's ruling about whether Rooker-Feldman applies. Well, I took it that if he had granted the motion to vacate, then the other side might very well have appealed that, but it doesn't seem to me like he had to grant that. He didn't think that Rooker-Feldman applied, and therefore that leaves it ... He's saying that he can't act as a court of review, so he's not going to see this, but you clearly can act as a court of review, so I'm bringing them out of the one place where nobody's going to dispute whether you have the right to review an order from an inferior court. I'm taking ... All right. You say no one would dispute that, but we typically don't review orders of Arkansas courts. No, you don't, and it's a peculiar course that this came here. Yes, it is peculiar. In fact, it was original. But the question is whether you chose the wrong avenue to try to get review because you didn't appeal the order of the U.S. District Court, and were left with a notice of appeal that purports to appeal three state court orders. I just wanted to give you a chance to ... I guess I'm not prepared to make any further argument that what I made, it seemed to me that I understood why the District Court felt it would be acting in the capacity of a court of review, and therefore it seemed to me the most efficient way to proceed with this would be to bring it to you. Now, true, you don't normally deal with state court orders, and how you got this one is a long and complicated story, but it really has nothing more to do than diversity of citizenship and the fact that this thing got removed. The only thing unusual about it is the timing of the removal, and that has nothing to do actually with the substance of this particular case. All right. Would you like to save your remaining time for a bubble or have more ... Yes. You do? All right. Very well. Yep. You may. Thank you. Thank you for your argument. If you could mute yourself, we'll hear from Mr. Brooks. Thank you, Your Honor. I'm Brian Brooks on behalf of Paul Wills. To your jurisdictional question, it was the one that I thought was the most interesting question in this case. You're right. If Rooker-Feldman applies, not only does the district court not have jurisdiction to review the Arkansas state court order, neither does this court. That's what Rooker-Feldman stands for. I don't think it does apply, and I wrestled with this and didn't find a case exactly like this, but the best I could come up with was because there is no final judgment by the Arkansas trial court, and no final judgment that was either reviewed by an Arkansas state court or lost its ability to be reviewed by an Arkansas state court, the Rooker-Feldman doesn't apply because once it went to the district court, the district court could have revised the order. It was completely incorrect that Rooker-Feldman applied, and again, if it would apply there, it would apply to this court. I think... So, the U.S. district judge could have set aside the state court order on the Rule 60B motion and issued a different order if the judge thought the state court was wrong. Yes, that's correct. Now, what I didn't find is a case precisely on your question, Your Honor. I did not find any case where the district court didn't do anything and held that Rooker-Feldman applied, and the circuit court of appeals ended up reviewing the state court order. But I think the county U.S. code section 1450 deals with that. I think that the state circuit court's order continues in full effect until the district court either overturns it or adopts it, and by working the way he did, I think he adopted it. I wish I could... I'm sorry. Go ahead. No, go ahead. Go ahead. Go ahead. All right. I wish I could say that Rooker-Feldman applied and this court didn't have jurisdiction to review the circuit court order, but I don't think that's the case. I think you can because it becomes the order that... I understand your point that Rooker-Feldman doesn't apply, but wouldn't the proper vehicle for an appeal be an appeal of the U.S. district judge's order saying that Rooker-Feldman applied and an argument on appeal that that was wrong and that this court should reverse the U.S. district court and either remand it or reach the legal issue in the first instance? Yes. That is exactly what should have been done. Frankly, I felt when I initially read the notice of appeal, I was in this case late. When I initially read the notice of appeal, I thought he was appealing the district court order. I noticed yesterday as I was reviewing exactly what you noticed, which is that he did not specifically appeal the denial based on Rooker-Feldman. That is a jurisdictional issue that you can raise on your own and decide for your own. I don't think that it makes a difference. I don't think that the efficient thing to do is to reverse and have the district court decide the summary judgment issue in the first instance because of your standard of review. Since your standard of review is de novo, you can rule on these papers every bit as much as the district court can. I think where we are, although we took a circuitous way of getting there, is where we ought to be. Well, that assumes that we have before us an appeal from the U.S. district judge's order. That's correct. I'm questioning whether we have that. If you want to go ahead on the assumption that we have that. Let me look at the notice of appeal again, if I may take a moment. You're right. You're right. The notice of appeal does not even inferentially appeal that order on the Rooker-Feldman doctrine. If that is not before you, then absolutely you're correct. An avenue for resolving this case is that there's no appellate jurisdiction over the trial court's denial of the motion to vacate. It should have been brought before the court. Assuming that you... Go ahead. Assuming we do have jurisdiction, you want to argue that the summary judgment order was correct? Yes. Mr. Burns and I agree on one thing. That is that this record is one of the oddest records that I have ever run across on summary judgment. The rest of the story is that Encompass's argument all along has been that because the exacerbation of Dr. Wills Parkinson's disease is what caused the loss in earning capacity and the extent of the loss of earning capacity, that there can't be summary judgment. The problem with its argument is that the argument does not match what its expert said. The expert, and this is encapsulated on appendix page 105. The expert says Parkinson's... Their expert says Parkinson's was not worsened at all. Not only was it not worsened by the accident, but the problems that Dr. Wills was having following the accident had nothing to do with Parkinson's disease. It had to do with his underlying problems that were exacerbated by the neck pain associated with musculoskeletal injury superimposed on existing chronic structural diseases in his cervical spine. That's in paragraph five. And then in paragraph seven, it refers of his affidavit, he refers to the problems being other factors involved which led to Dr. Wills decreased mobility and increased symptomatology in terms of tremor and speech. These factors include significant, and it goes into the depression and the musculoskeletal problems. That's when my colleague, Mr. Gilbreth, in what he calls a motion for judgment that came after his motion for summary judgment, which was in essence a reply in support of his motion for summary judgment, pointed out to the district judge that these other factors that Dr. Arkin encompasses his own expert ties to the accident are what caused the inability to earn and the loss of earning capacity. So the odd thing about this case, as I said, is that it's the testimony of encompasses own expert that makes the link that the Arkansas state court judge was relying on to grant summary judgment. Now, backing up two steps, what encompasses... Counselor, run that, if you would, run that by me again. Sure. So the damages don't run through the Parkinson's diagnosis, is that your view of the record here? That's my view of what encompasses expert said, yes. That's exactly what my view of what encompasses expert said. And where is that in the record? Appendix page 105 is the second page of Arkin's affidavit. Was there a dispute about whether the accident aggravated the Parkinson's? That was the initial... I mean, I agree with Mr. Burns. The initial summary judgment motion said Parkinson's disease was aggravated and other injuries were sustained that caused a complete loss in earning capacity. Encompass then responded with Dr. Arkin's affidavit. In Arkin's affidavit, he says it's other factors that caused the problems Wills was having. The problems being the tremor, the increased symptomatology in terms of tremor and speech and his decreased mobility. That's what Arkin specifically refers to in his affidavit. And that was in response to a motion for summary judgment? That was encompasses expert's affidavit. Encompasses, okay. Submitted in response to the motion for summary judgment, yes. So you're saying by doing that, Encompass conceded effectively that the Parkinson's was not a cause? Yes, that's what Encompass's evidence was. And so in the motion for judgment, which is part of the record, it's on appendix page 111. Mr. Gilbreth then begins to emphasize to the district, to the circuit court of the Bastion County that it is these other factors that Encompass concedes caused the problem and the loss of learning capacity. Now again, backing up to- Counselor, are you reading Dr. Arkin's affidavit as saying there was no aggravation or degeneration of the Parkinson's at all? Or just that the accident didn't cause it? That there was no degeneration of the Parkinson's at all. That's exactly how I read it, Judge. And where is that in that affidavit? It may not be specifically stated, I guess. In my opinion, that accident, this is paragraph six. In my opinion, that accident did not have any effect on the course of Dr. Will's Parkinson's disease. If there had been an abrupt change in the course of his Parkinson's disease, I would expect continued worsenings of symptoms rather than the dramatic improvement back to his original long-standing course clearly documented by the neurologist taking care of him, Dr. Keating and Dr. Godden, particularly with respect to his mobility and tremor. In my opinion, soon after the accident, there were other factors involved which led to Dr. Will's decreased mobility and increased symptomatology in terms of tremor, etc. But wouldn't there still be a factual question whether the Parkinson's, independent of the accident, caused him to lose his ability to work? Not according to Dr. Arkin. According to Dr. Arkin, Parkinson's did not get worse. And he fleshes that out if you can read it in the record. It's very small and hard to read. I had to squint. Beginning at appendix page 133, you have Dr. Arkin's report. And throughout it, this is where he goes through and analyzes all the medical records and where he makes his point even more strenuously that this would not be part of Parkinson's disease. If you look at appendix page 135, down at the bottom paragraph, he uses the words, this would not be part of Parkinson's disease. When he talks about there was also cognitive decline noted on examination. This would not be part of Parkinson's disease. And then that report ends with essentially the same paragraph that is put into the affidavit. So what I'm saying is that Encompass's expert provides evidence and testimony that is contrary to Encompass's argument. Its argument was there's a question of fact about what caused the Parkinson's exacerbation. Their expert says Parkinson's wasn't exacerbated. And that's what the district, I keep saying district court, I'm sorry, but the circuit court of Sebastian County latched onto to enter the summary judgment award. Now what has never been contested by Encompass, which even if you don't buy that Dr. Arkin gets you there on the causation link, is that number one, there was a complete loss of earning capacity. And number two, that the value of that loss of earning capacity was at least $500,000, which is all the money we're talking about here because it's a limit of Encompass's policy. And Judge Kobus, the insurance policy is not in the record that I can find. But it has never been a question about the $500,000. It also has never been a question after Encompass's answer that there was exhaustion of underlying liability limits to trigger the UIM responsibility. And you would agree that there's a causation requirement under the policy? Yes. Yeah, okay, yeah. Yes, the accident had to have caused the lost earning capacity. Yeah, simple question, it's just, yeah. Yes. And then I think the last thing I would say is, again, the summary judgment motion had three components, two issues and three components. Number one, there was a loss, total loss of earning capacity that was never contested. Number two, the total loss of earning capacity was at least $500,000. That was never contested. The fighting issue was what caused the loss in earning capacity and Encompass's own expert ties it to other factors. And twice good, Wills' expert used Parkinson's disease and other factors. And the circuit court tied Arkin's testimony and the other factors together to reach summary judgment, and we'd ask that it be affirmed. But now you just said that Wills' own expert said it was a combination, Parkinson's. He did, and I've been very candid about that in the brief. If all we had was Wills' expert and Arkin saying the accident didn't cause Parkinson's to be exacerbated, then there would be no summary judgment. But because Arkin said it's these other factors that caused the loss in earning capacity, not Parkinson's, that's why the circuit court got it right. Well, but Arkin is just a witness. He's not a party opponent making an admission. It's almost like we have battling experts who are conflicting and they're almost at cross purposes with the party who's presenting them. But I query whether we still have a factual dispute about whether the Parkinson's had some role in the decrease because of what Wills' expert says. Yeah, and let me be very clear about one thing, if I may. My time is up, but I'd like to say this if it's allowed. Go ahead. This is the summary judgment record. And based on the summary judgment record with Arkin saying that the Parkinson's was not exacerbated but Wills' problems were caused by these other injuries, that's why we're entitled to summary judgment. It is based on Arkin's testimony. If this case goes to trial, I agree with Mr. Burns. It'll be all about exactly how much damage was caused by the accident, including the worsening of Parkinson's disease. But because of the way they structured the record and what Arkin said, the circuit court of Sebastian County got the issue right when he said that it's the other injuries that were never rebutted and, in fact, enhanced by Arkin's testimony. Thank you. Okay. Thank you for your argument, Mr. Brooks. Mr. Burns, we'll hear from you in rebuttal. You'll have to turn on your microphone. Excuse me, Your Honor. Dr. Arkin was, in his affidavit, was only talking about immediately after the accident. He wasn't offering an opinion about his future course of Parkinson's. Funny that the fact that he got better after the accident indicates to him that the accident didn't cause a decrease because that would have been permanent and he would have never gotten better. So that's Dr. Arkin's testimony. Run that by me again, Counselor. Dr. Arkin's testimony, in your view, addresses only the time period immediately following the accident? Is that correct? Well, we didn't ask Dr. Arkin whether Dr. Will's Parkinson's got worse. We only asked him whether the accident affected or caused it to get worse. He looked at the record and said, it does not appear that the accident caused it to get worse because, although he got worse right afterwards, that was a result of other issues. Then he got better again. But he didn't offer an opinion about whether his Parkinson's continued to get worse after that. If he had really thought that his Parkinson's was no worse now than ever, there would have been no point in even asking his opinion about anything. Your Honor, I see my time is up. May I respond very briefly on the Rooker-Feldman issue? Yes. I would note that if there had been no motion to vacate filed, if we had just accepted the removed case from the circuit court, then it seems clear to me that those circuit court orders would have been reviewable by you. I do not believe that the fact that a motion to vacate was filed and then denied, denies you the jurisdiction to review what would have been reviewable otherwise. Otherwise, we're in a strange situation where I'm in district court and have nowhere to appeal these orders. I can't appeal it to you and I can't appeal it to the state court either. I'm just stuck. I think you're missing my point. My suggestion is you can get review, but you have to challenge something that the U.S. district judge did. Whether it be denying the 60B motion or adopting the state court order and entering a final judgment in the federal case. You didn't do either one. Well, I suppose I took it as that because the court accepted the case and did not vacate those orders, he was adopting them for review with you. That's why I think you do have the jurisdiction to review this case. In fact, that's exactly why I think he did not grant the motion to vacate because you are to review this case. You are a court of review. Your Honor, my time is out. Subject to any further questions, I do thank you for your time. You asked that these orders be reversed so we can get to trial on this. Okay, seeing no other questions, I thank both counsel for your arguments. Thank you, Your Honor. The case is submitted. The court will file a decision in due course.